IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ACADEMY HOMES OF TYLER, LTD., | § § § § | |
| Plaintiff, | § § | CASE NO. 2:05-CV-551 |
| vs. | § § | |
| LAKESIDE PARK HOMES, INC., | § § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Lakeside Park Homes, Inc.'s ("Lakeside Park") Motion to Dismiss or Transfer Venue (Docket No. 6). Having considered the parties' written submissions and oral arguments, the Court **DENIES** Lakeside Park's motion to dismiss for lack of personal jurisdiction and, pursuant to the parties' agreement, **GRANTS** Lakeside Park's motion to transfer this action to the Tyler Division of the Eastern District of Texas.

**BACKGROUND**

Academy Homes of Tyler, Ltd. ("Academy") is a Tyler, Texas company that sells manufactured housing. Lakeside Park is a Georgia corporation that also sells manufactured housing. On September 22, 2005, Lakeside Park sent Academy a facsimile advertising for sale manufactured homes that met U.S. Department of Housing and Urban Development housing standards. According to Academy, Lakeside Park's representative stated in several telephone conversations with Academy's president that Lakeside Park could fill an order for thirty manufactured housing units that met certain specifications. Academy contends that based on these representations it contracted with

1

Valero Energy Corporation ("Valero") on September 23 to deliver thirty manufactured "on chassis" homes to Valero's Port Arthur, Texas plant. Academy alleges that on September 29 it then contracted with Lakeside Park to purchase thirty "on chassis" homes for delivery to Port Arthur. Academy's president received, signed, and returned an invoice from Lakeside Park for the thirty units and also sent Lakeside Park a deposit of $37,700. Lakeside Park never delivered the units and ultimately returned Academy's undeposited check, contending that Texas law prohibits the sale of "on chassis" homes. Academy alleges it was forced to find five units as partial performance of its agreement with Valero and that it lost the opportunity to sell Valero more units.

Academy sued Lakeside Park in diversity under 28 U.S.C. § 1332, claiming that Lakeside Park breached the contract, committed common law fraud, and fraudulently induced Academy into the contract by misrepresenting its ability to deliver the units. Academy also claims that Lakeside Park is liable under a theory of promissory estoppel because Academy reasonably and detrimentally relied Lakeside Park's representations. Lakeside Park moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and alternatively moves under 28 U.S.C. § 1404(a) to transfer venue to Georgia or to the Tyler Division.

## STANDARD OF REVIEW

When a court does not conduct an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must present sufficient facts to make out a prima facie case for the exercise of jurisdiction over the nonresident defendant. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). A court must accept as true all uncontroverted allegations in the plaintiff's complaint, and it must resolve all factual conflicts in the parties' affidavits in favor of the plaintiff. *Id*. After a plaintiff makes a prima facie case of jurisdiction, the burden shifts to the

defendant to present a "compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

## ANALYSIS

Whether the Court has personal jurisdiction over Lakeside Park depends on whether personal jurisdiction lies under the Texas long-arm statute and the Due Process Clause of the U.S. Constitution. *Alpine View*, 205 F.3d at 214. The Texas long-arm statute extends the reach of personal jurisdiction to the limits of the Due Process Clause. *Id.*; *see also* TEX. CIV. PRAC. & REM. CODE § 17.042. Thus, Texas courts have personal jurisdiction over a nonresident defendant if the defendant purposefully availed itself of the state's benefits and protections "by establishing 'minimum contacts'" with Texas and if the "exercise of jurisdiction over the nonresident . . . defendant [does] not offend 'traditional notions of fair play and substantial justice.'" *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) and *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)).

1. <u>Minimum Contacts</u>

When a plaintiff's alleged injuries arise out of or relate to the defendant's minimum contacts, those contacts sufficiently support the exercise of specific jurisdiction over that defendant. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003). Analysis of minimum contacts is not mechanical and quantitative; rather, it requires the Court to consider the quality and nature of the defendant's activities and the totality of the circumstances to determine whether the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum [s]tate" and could reasonably anticipate being haled into court in the forum state. *Burger King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Stuart v. Spademan*,

3

772 F.2d 1185, 1192 (5th Cir. 1985) (declaring that the purposeful-availment inquiry is a totality-of-the-circumstances test).

A forum cannot exercise personal jurisdiction over an out-of-state defendant merely because the defendant contracted with a plaintiff that resides in the forum. *See Electrosource Inc. v. Horizon Battery Techs.*, *Ltd.*, 176 F.3d 867, 872 (5th Cir. 1999); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986). To evaluate purposeful availment, courts look to such factors as the places of negotiation, contracting, performance, delivery and payment, the place where title to any goods would pass, and the contract's choice-of-law clause, if any exists. *Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 94 (5th Cir. 1992); *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068-69 (5th Cir. 1992); *Miss. Interstate Express*, *Inc. v. Transpo*, *Inc.*, 681 F.2d 1003, 1007 n.2 (5th Cir. 1982). The place of performance in particular is a "weighty consideration," even though it is not "automatically determinative" of personal jurisdiction. *See Electrosource, Inc.*, 176 F.3d at 874; *Command-Aire Corp.*, 963 F.2d at 94; *c.f. Holt Oil*, 801 F.2d at 778 (finding that Texas courts had no specific jurisdiction when all material performance under a contract occurred outside of Texas). However, a plaintiff's totally unilateral decision to perform its part of the contract in the forum state diminishes this factor's weight. *Command-Aire Corp.*, 963 F.2d at 94.

In faxing a sales advertisement to Academy, Lakeside Park solicited business with a Texas resident. Negotiations, contracting, and payment took place in Texas and Georgia, at the parties' respective locations. The invoice—signed by representatives of both parties—did not include a choice of law clause, but it did include Academy's Texas contact information and did identify Valero's Port Arthur address as the place of shipment. Delivery of the homes—a material part of

4

the parties' contract—was to be in Texas. Lakeside Park knew (or should have known) that it had contracted with a Texas company and that it was obligated to perform a material part of its contractual duties in Texas. The obligation did not result from a unilateral decision on Academy's part. Lakeside Park was advertising units that satisfied HUD requirements "to meet [manufactured home dealers'] FEMA housing needs." In late September 2005, in the aftermath of Hurricane Katrina and in the midst of Hurricane Rita (which made landfall over southeast Texas on September 24), the bulk of this need was in Texas and Louisiana.[1] Lakeside Park does not contend that the contract required title to the homes to pass outside of Texas or that Academy assumed the risk of loss during shipment; presumably, title would have passed at delivery, in Texas. *C.f. Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184, 188-89 (5th Cir. 1978) (holding that defendant's "FOB Florida" shipment to Louisiana did not favor personal jurisdiction there because title passed outside of Louisiana and plaintiff bore the risk of loss during shipment). Thus, Lakeside Park purposefully solicited business in Texas and contracted with a Texas resident to deliver manufactured homes to Texas, where title would pass. This suit directly arises from those contacts.

In addition, communications with a forum that give rise to intentional tort causes of action constitute purposeful availment because the defendant is purposefully availing itself of the privilege of causing a consequence in the forum. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). Academy brings fraud and fraudulent inducement claims stemming from "the representations made to [Academy] regarding [Lakeside Park's] ability to deliver the units." These alleged misrepresentations are intentional torts that constitute purposeful availment of Texas's laws. *See*

---

[1] Given these facts, it is difficult to believe that Lakeside Park unintentionally sent the fax to a Texas manufactured-home seller.

*Calder v. Jones*, 465 U.S. 783, 789-90 (1984) (finding a single tortious act "expressly aimed" at the forum state can establish minimum contacts); *Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001) (holding that the defendant's single telephone call with the plaintiff in Texas and one contract sent to Texas, both of which contained material misrepresentations that formed the basis of the cause of action, were sufficient to establish minimum contacts).

Lakeside Park's contacts were not random, fortuitous, or attenuated and did not result from Academy's unilateral activity. *See Burger King*, 471 U.S. at 475. Viewed together, they are sufficient minimum contacts to permit the Court to exercise specific personal jurisdiction over Lakeside Park.

2. Traditional Notions of Fair Play and Substantial Justice

Because Lakeside Park has minimum contacts with Texas, the burden shifts to Lakeside Park to make a "compelling case" that exercising jurisdiction would offend traditional notions of fair play and substantial justice. *Wien Air*, 195 F.3d at 215. In analyzing the defendant's showing, a court considers and balances: (1) the defendant's burden in having to litigate in the forum state; (2) the forum state's interest in adjudicating the suit; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the forum state's shared interest in furthering fundamental social policies. *Rushton Gas Turbines, Inc. v. Donaldson, Inc.*, 9 F.3d 415, 421 (5th. Cir. 1993); *see also Asahi*, 480 U.S. at 113.

Lakeside Park will be burdened by having to litigate this controversy in Texas, but the Court must weigh this burden against the other factors, including Texas's interest in providing effective means of redress for its residents. Academy has an interest in obtaining convenient and efficient relief here, and nothing indicates that the Court cannot resolve this controversy efficiently. Lakeside

Park does not contend that its inconvenience in having to litigate in this forum exceeds the inconvenience Academy would face if forced to litigate elsewhere. Further, Lakeside Park gives no support for its argument that this Court's exercise of jurisdiction contravenes public policy. Therefore, Lakeside Park's inconvenience does not offend traditional notions of fair play and substantial justice.

## CONCLUSION

Academy has established that this Court has personal jurisdiction over Lakeside Park. Accordingly, the Court **DENIES** Lakeside Park's Rule 12(b)(2) motion to dismiss. In accordance with the parties' express agreement made during oral argument, the Court **GRANTS** Lakeside Park's motion to transfer this action to the Tyler Division of the Eastern District of Texas, and thereby **DENIES AS MOOT** Lakeside Park's motion for transfer to Georgia.

**So ORDERED and SIGNED this 7th day of April, 2006.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**